**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1873

COROTOMAN, INC.,

Plaintiff - Appellant,

v.

CENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY, INC.,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Irene C. Berger, District Judge.  (2:21-cv-00545)

Argued:  May 7, 2024                               Decided:  July 19, 2024

Before GREGORY, HEYTENS, and BENJAMIN, Circuit Judges.

Question certified to the Supreme Court of Appeals of West Virginia by unpublished order. Judge Gregory directed entry of the order with the concurrences of Judge Heytens and Judge Benjamin.

**ARGUED:**  Mark Russell Sigmon, MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC, Raleigh, North Carolina, for Appellant.  Mychal Sommer Schulz, BABST, CALLAND, CLEMENTS, ZOMNIR, P.C., Charleston, West Virginia, for Appellee.  **ON BRIEF:**  Lucy N. Inman, Scott C. Harris, Katharine W. Batchelor, MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC, Raleigh, North Carolina, for Appellant.  Austin D. Rogers, BABST CALLAND, P.C., Charleston, West Virginia; Melissa Foster Bird, NELSON MULLINS RILEY & SCARBOROUGH LLP, Huntington, West Virginia, for Appellee.

O R D E R

GREGORY, Circuit Judge:

The United States Court of Appeals for the Fourth Circuit, availing itself of the privilege afforded by the State of West Virginia through the Uniform Certification of Questions of Law Act, West Virginia Code § § 51-1A-1 to 51-1A-13, hereby requests that the Supreme Court of Appeals of West Virginia exercise its discretion to resolve a certified question of law. Pursuant to West Virginia Code § 51-1A-6(a)(1), we identify the "question of law to be answered" as:

> Whether, in the appropriate case, West Virginia courts would apply the gross disproportionality rule to limit an injured party's damages in a breach of a construction contract dispute; and, if so, how gross disproportionality is calculated, which party (the breaching party or the injured party) bears the burden of proving gross disproportionality and the specific amount of the alternative form of damages, and what is the consequence of that party failing to meet its burden.

Resolution of this question is outcome determinative in the present appeal, as the appropriate award of damages is conclusively resolved by the applicability of the gross disproportionality rule and the burden of proof if the rule applies. And, in our view, there is no controlling court decision, constitutional provision, or statute of West Virginia answering this question, rendering it appropriate for certification. *See* W. Va. Code § 51--1A-3; *Grattan v. Bd. of Sch. of Comm'rs of Balt. City*, 805 F.2d 1160, 1164 (4th Cir. 1986) (explaining that certification is appropriate where this Court is "required to address a novel issue of local law which is determinative in the case"). We acknowledge that the Supreme Court of

2

Appeals of West Virginia "may reformulate the question." § 51-1A-6(a)(3). Accordingly, we exercise our discretion to sua sponte certify a question of state law. *See Shears v. Ethicon, Inc.*, 64 F.4th 556, 563 (4th Cir. 2023).

I.

The Central West Virginia Regional Airport Authority operates the Yeager Airport in Charleston, West Virginia. In the mid-2000s, the Airport Authority decided to remove a large hill (which the parties refer to as a knoll) at the end of the airport's runway. J.A. 3234–35.[1] Because of the knoll's location, airplanes approaching or departing the runway had to change elevation very quickly, which was costly and more difficult than ascending or descending at the usual rate. J.A. 3183. The Airport Authority obtained grants from the Federal Aviation Administration (FAA) to acquire the property that would be affected by the project and to complete the construction work to remove the knoll. J.A. 3237–39. Corotoman, Inc., owned some of the property that the Airport Authority sought to acquire. J.A. 1988.

To avoid costly and time-consuming condemnation proceedings, the Airport Authority aimed to acquire the property voluntarily. J.A. 3240–41. Before making an offer to Corotoman, however, it retained Zdrojewski & Company to conduct an appraisal of the property in late 2010. J.A. 3952–53. The Zdrojewski appraisal determined that the value of the property at the time was $180,000. J.A. 1814.

The Airport Authority offered Corotoman $260,125 for the property. J.A. 3211–13. Corotoman's president, John Wellford, rejected the offer. J.A. 3245. Instead, the

---

[1] Citations to the "J.A" refer to the Joint Appendix filed by the parties in this appeal.

3

parties negotiated an agreement under which, among other things, the Airport Authority would be allowed to enter Corotoman's land to remove the knoll, and, after the knoll had been removed, the Airport Authority would overblast the land to further decrease the elevation to 35 feet below the ground level established by removing the knoll.  J.A. 445, 453–54.  Overblasting is a process by which holes are drilled to the required depth (here 35 feet), explosives are placed into the holes, the explosives are detonated to loosen the land, and the loose material is subsequently removed and carted off.  J.A. 2366, 2372–73, 3757.  The overblasting requirement was to Corotoman's benefit because the overblasted land would be flatter and thus easier to develop; the requirement was not related to or necessary for preventing interference with airplane trajectories arriving at or departing from the airport.  The overblast would happen after the knoll removal on the land where the knoll had been when the elevation was already low enough so as not to interfere with the approaching and departing airplanes.

With respect to damages, the agreement between the parties provided that

> in the event of a breach occurring after commencement of the Project, Corotoman may, in its discretion and as the circumstances reasonably dictate, revoke the License granted herein and/or seek the greater of either (1) actual, compensatory, consequential, and/or incidental damages or (2) liquidated damages in the amount of ten thousand dollars ($10,000.00) per breach.

J.A. 457.

The knoll-removal project was completed per the Airport Authority's requirements, but the overblast was never done.  J.A. 2866.  Corotoman filed suit against the Airport

4

Authority in 2019, alleging breach of contract.[2]  J.A. 18.  In January 2022, the district court granted Corotoman's motion for partial summary judgment, concluding that the undisputed facts established that the Airport Authority had breached the agreement by failing to overblast the land, and that no valid defenses excused the breach.  J.A. 2874.

In lieu of a bench trial in open court on the issue of damages, the parties filed written submissions and evidence.  J.A. 5118.  These included an expert report from each party regarding the cost to complete the overblast.  J.A. 5122.  Corotoman's expert opined that the overblast would cost $14,659,351.  *Id.*  The Airport Authority's expert opined that Corotoman's expert had overestimated the costs of removing the blasted material and thus estimated the total cost to be $4,381,080.  *Id.*  The district court concluded that this cost to complete was grossly disproportionate to the value of the property, which it approximated based on the 2010 Zdrojewski appraisal.  But the district court conceded that it could not establish the current value of the property because the appraisal was "too outdated, both in terms of current property values and the current condition of the property."  J.A. 5131.  It held that awarding cost-to-complete damages (damages in the amount that it would cost to complete the outstanding work, here, the overblast) would "serve only to penalize the Airport Authority and act as a windfall to Corotoman, rather than placing Corotoman in the position it would be in absent the breach."  J.A. 5132.  Thus, it concluded that

---

[2] The suit was filed and jurisdiction was proper in federal court under 28 U.S.C. § 1334(b) because Corotoman originally filed this case as an adversary proceeding in its Chapter 11 bankruptcy, and this claim directly affects the bankruptcy estate.  We have jurisdiction under 28 U.S.C. § 1291 over the district court's final judgment, which it issued on July 28, 2023.

5

Corotoman was entitled only to diminution-in-value damages (damages in the amount that the property value decreases as a result of the breach). *Id.* Finding that "the record is devoid of any evidence that would allow the Court to determine the diminution in value caused by the Airport Authority's breach," it further held that Corotoman had failed to meet its burden to prove damages beyond mere speculation and was thus entitled only to nominal damages. J.A. 5135. Corotoman timely appealed and argued before this Court that the district court erred in not awarding cost-to-complete damages.

## II.

Under West Virginia law, "[a] claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." *Sneberger v. Morrison*, 776 S.E.2d 156, 171 (W. Va. 2015). Only the question of damages is at issue in this appeal. "As a general rule, the proper measure of damages in such cases involving building contracts is the cost of repairing the defects or completing the work and placing the construction in the condition it should have been in if properly done under the agreement contained in the building contract." *Steinbrecher v. Jones*, 153 S.E.2d 295, 304 (W. Va. 1967). But many states have an exception to this default rule: the injured party may not recover cost to complete damages if those damages would be grossly disproportionate to the value that the uncompleted work adds to the property. *See, e.g.*, *Nichols Const. Corp. v. Va. Machine Tool Co.*, 661 S.E.2d 467, 473 (Va. 2008); *Panorama Vill. Homeowner's Ass'n v. Golden Rule Roofing, Inc.*, 10 P.3d 417, 422 (Wash. App.

6

2000); *Andrulis v. Levin Const. Corp.*, 628 A.2d 197, 206–08 (Md. 1993). This exception is called the gross disproportionality rule.

The district court applied the gross disproportionality rule to this case and then concluded that Corotoman was entitled only to nominal damages because the record was devoid of evidence of the diminution in value resulting from the Airport Authority's breach. The question before us is whether the district court erred in applying the gross disproportionality rule, and, if not, to which party's detriment the lack of evidence in the record inures.

The Airport Authority argues that West Virginia courts have expressly recognized the gross disproportionality rule and points to two cases. *See* Resp. Br. at 21 (citing *Steinbrecher*, 153 S.E.2d at 304; *Trenton Constr. Co. v. Straub*, 310 S.E.2d 496, 499 (W. Va. 1983). Contrary to the Airport Authority's contention, however, these cases do not actually enshrine the gross disproportionality rule in West Virginia law. In *Steinbrecher v. Jones*, the court stated only that the gross disproportionality rule, recognized in "some states," was "not involved under the facts presented by the evidence produced at the trial held in this present case, so [the court did] not need to discuss it." 153 S.E.2d at 304. And in *Trenton Construction Co. v. Straub*, the court cited its discussion in *Steinbrecher* and again concluded that the gross disproportionality rule was "not involved under the facts presented at trial" because the cost was "clearly not disproportionate to the value of the Straubs' home and the trial court was correct in applying the cost of repair rule." 310 S.E.2d at 499. Neither case can fairly be read as resolving the applicability of the gross disproportionality rule under West Virginia law.

We thus face the novel local-law question of whether West Virginia courts would apply the gross disproportionality rule in the appropriate case and, if so, how disproportionality is calculated, which party bears the burden of proving gross disproportionality and the specific amount of the alternative form of damages, and what consequences follow if that party fails to meet its burden. Because the answer is "determinative" in this appeal and "there is no controlling appellate decision, constitutional provision or statute" of West Virginia, certification is appropriate. § 51-1A-3.

## III.

In light of the foregoing, pursuant to the privilege made available to this Court by the West Virginia Uniform Certification of Questions of Law Act, it is hereby ORDERED:

(1)    That the question set forth herein be certified to the Supreme Court of Appeals of West Virginia for resolution;

(2)    That the Clerk of this Court transmit to the Supreme Court of Appeals of West Virginia, under the official seal of this Court, a copy of this Order of Certification; and

(3)    That the Clerk of this Court provide the original or copies of all or such portions of the record before this Court as may be requested by the Supreme Court of Appeals of West Virginia, with any and all such requests being effective upon notification by ordinary means from the Clerk of the Supreme Court of Appeals.

Pursuant to West Virginia Code § 51-1A-6(a)(4), we note that all of the parties in this matter are represented by counsel, and the names and addresses of counsel of record for the parties are:

*Counsel for the Plaintiff, Corotoman, Inc.*:

Katharine Wood Batchelor
Scott Crissman Harris
Lucy Noble Inman
MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN, PLLC
900 West Morgan Street
Raleigh, NC 27603

Mark Russell Sigmon
MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN, PLLC
Suite 1001
5 West Hargett Street
Raleigh, NC 27601

*Counsel for the Defendant, Central West Virginia Regional Airport Authority, Inc.*:

Katrina Noel Bowers
Austin Drake Rogers
Mychal Sommer Schulz
BABST, CALLAND,
  CLEMENTS, ZOMNIR, P.C.
Suite 1000
300 Summers Street
Charleston, WV 25301

Melissa G. Foster Bird
NELSON MULLINS RILEY
  & SCARBOROUGH, LLP
Suite 200
949 3rd Avenue
Huntington, WV 25701

This Order of Certification is entered by Judge Gregory, with the concurrences of Judge Heytens and Judge Benjamin.

*QUESTION CERTIFIED*

A True Copy, Teste
Nwamaka Anowi, Clerk
BY: <u>Jeffrey S. Neal</u>
    Deputy Clerk

FOR THE COURT:

Roger L. Gregory
United States Circuit Judge

9